IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ERIC D. KIRK, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 16-cv-225-SMY-RJD |
| J. CAMPANELLA et al., | ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Eric Kirk, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), brings this lawsuit pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated at Vienna Correctional Center ("Vienna"). Specifically, Plaintiff alleges that he was injured when he slipped in a puddle and fell. Following review of the Amended Complaint (Doc. 27), Plaintiff proceeds on the following claims:

**Count 1:** Defendants Campanella, Dillon, and Love subjected Kirk to unconstitutional conditions of confinement in Building #19, in violation of the Eighth Amendment.

**Count 2:** Defendant Campanella denied Kirk adequate medical care for the injuries he sustained to his neck, back and groin after falling in a puddle of water in Building #19 on November 29, 2015, in violation of the Eighth Amendment.

**Count 3:** Retaliation claim against defendant J. Ramage for threatening to keep Kirk in the Vienna segregation unit unless Kirk withdrew his grievances.

(Doc. 27).

This matter is now currently before the Court on the defendants' Motion for Summary Judgment (Doc. 60). Plaintiff did not file a response. For the following reasons, Defendants' Motion is **GRANTED**.

## Factual Background

Plaintiff Eric Kirk was housed on the third floor of Building 19 at Vienna from August 28, 2015 through December 3, 2016 (Plaintiff's Deposition, Doc. 60-2 at 1). Building 19 housed inmates in an open room, dormitory-style setting (Id.). Kirk alleges that the windows in Building 19 were broken, and the roof would leak when it rained, creating puddles in various areas (Doc. 60-4 at 19). Mop buckets would be set up to catch the majority of the water, but they would not catch all of the water and some would end up on the floor (Id. at 25-26). The heat and fans were broken, so that it was excruciatingly hot in the summer and very cold during the winter (Id. at 22). There were cockroaches and mice, black mold in the showers, and the toilets would back-up in the dorm on occasion (Id.).

On November 29, 2015, Kirk got out of bed to walk to the restroom and slipped and fell in a puddle on the floor (Id. at 39). He hit his head on the floor when he fell (Id. at 46). Other inmates told correctional officers about Kirk's fall, and they in turn called nurses to respond (Id. at 47).

The nurses took Kirk to the healthcare unit on a stretcher (Id. at 47, 49). He was then taken to Heartland Regional Medical Center ("Heartland") by ambulance, where he underwent an MRI and received medication for his injuries (Id. at 40, 42, 54). Kirk alleges that his neck, back and groin were injured as a result of the fall (Id. at 39-40).

When Kirk returned from Heartland, he was housed in the healthcare unit for a period of days (Id. at 56). He took five or six different types of medications for his injuries (Id. at 64). Medical staff at Vienna instructed him to use warm compresses for his groin injury (Id. at 66). Kirk was denied a neck brace and back brace by Vienna medical staff (Id. at 63).

On December 2, 2015, Kirk filed an emergency grievance stating that he feared for his safety and security in Building 19 due to the building's maintenance problems, and requesting a

transfer out of Building 19 (Id. at 106, 60-6 at 4). The next day, Defendant Ramage called Kirk to the second floor to discuss the grievances (Id. at 106, 110). Ramage asked Kirk what he wanted, and Kirk replied that he wanted to be moved out of Building 19 (Id. at 108). Ramage asked Kirk if he would withdraw the grievance if Ramage moved him (Id.). Kirk informed Ramage that he would not withdraw his grievance (Id.). Ramage then told Kirk that he would be moved to segregation because he stated in the grievance that he feared for his health and safety (Id. at 109). Kirk responded that he wanted to be moved to Housing Unit 4, and Ramage told him he would only be moved there if he withdrew the grievance; otherwise, he was being moved to segregation (Id.). Kirk refused to withdraw the grievance and was placed in segregation (Id.).

A major came to segregation and asked Kirk if he would withdraw his grievance. When he again refused, he was kept in segregation on investigatory status (Id. at 111). Kirk alleges that while in segregation, he missed a healthcare appointment and was unable to contact his family (Id. at 114, 116). He spent five days in segregation and was then moved to Housing Unit 4 (Id. at 112, Doc. 60-2 at 1).

Kirk's medical records indicate that he was seen by medical staff on at least twenty-one (21) separate days between November 29, 2016 and June 23, 2016 (Doc. 60-5). According to the records, he was prescribed a myriad of medications including, Prednisone, Tylenol, Ibuprofen, Robaxin, Naprosyn, Bactine, Motrin, and Tramadol (Id.). On March 3, 2016, Kirk left Vienna for a medical furlough at Shawnee where he received x-rays of his cervical, thoracic, and lumbar spine (Doc. 60-1 at 76-77).

On April 22, 2016, Kirk was informed he was being moved from Housing Unit 4 to Housing Unit 2 (Id. at 58). He objected to being moved because he claimed having to walk farther to the dining hall would put strain on his injured back (Id. at 59). The C/O informed him that he had to move anyway (Id. at 60). Kirk alleges that while he was moving his property box

from one unit to the next, he fell down the stairs (Id. at 60-61). He claims that he reinjured his neck and back as a result of the second fall (Id. at 62).

Correctional officers carried Kirk to the healthcare unit on a stretcher (Id. 81). He was prescribed medication for his injuries (Id. at 83). Kirk's neck and back pain improved by the date of his deposition, but he is not back to one hundred percent (Id. at 87). He had to put in request slips each time he needed to be seen by healthcare (Id. 65).

## Discussion

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). When deciding a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Count I – Conditions of Confinement

Although the Constitution "does not mandate comfortable prisons," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)), it does not permit inhumane ones. *Farmer*, 511 U.S. at 832. The Eighth Amendment imposes duties on

prison officials who must provide humane conditions of confinement and must "take reasonable measures to guarantee the safety of inmates." *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). In order to state such a claim under Section 1983, a plaintiff must establish: (1) that he was "incarcerated under conditions posing a substantial risk of serious harm" and (2) that the defendants acted with "deliberate indifference" to his health or safety. *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 834)). In other words, Plaintiff must demonstrate that Defendants had "actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997) (quoting *McGill v. Duckworth*, 944 F.2d 344, 348 (7th Cir. 1991)). Negligence or even gross negligence is not sufficient for liability; their actions must be intentional or criminally reckless. *Farmer,* 511 U.S. at 837.

In *Bell v. Ward*, an inmate filed a § 1983 action alleging that prison officials' failure to clean up water in his cell block, which resulted in his slip and fall, violated his rights under the Eighth and Fourteenth Amendments. 88 F. App'x 125 (7th Cir. 2004). The United States District Court for the Northern District of Illinois dismissed the Complaint, and the Seventh Circuit affirmed the dismissal, finding the prison officials' allegedly negligent failure to ensure that the cell block floor was dry did not violate the Eighth Amendment. *Id.* The Court reasoned that although wet floors do present a possibility that inmates might slip, the plaintiff's allegations did not suggest a *substantial* risk of serious harm that reflects the deliberate indifference required to impose liability under the Eighth Amendment. See also, *LeMaire v. Maass,* 12 F.3d 1444, 1457 (9th Cir.1993) ("slippery prison floors ... do not state even an arguable claim for cruel and unusual punishment."); *see also Snipes v. DeTella,* 95 F.3d 586, 592 (7th Cir.1996) ("an inch or two" of accumulated water in the shower not "an excessive risk to inmate health or safety").

Defendants argue that the facts in this case are substantially similar to those in *Bell* and that the wet floor did not present a substantial risk of serious injury. The Court agrees. Water puddles on the floor do not present a sufficiently substantial risk of serious injury to implicate the constitution and trigger liability for an accidental fall. Ignoring the hazards associated with a wet floor is negligence, but does not amount to the "criminal recklessness" required for an Eighth Amendment violation.

Kirk also asserts that he was exposed to mold in the showers, the presence of pests and rodents, exposure to toilets that would back-up with urine and feces, and uncomfortable temperatures. However, he acknowledged during his deposition that the only injury he suffered from the conditions of his confinement were neck, back and groin pain from slipping in the puddle. There is no evidence that he suffered any injury from the presence of mold, pests, rodents, broken toilets or uncomfortable temperatures. While Kirk may have been subjected to unpleasant conditions, the totality of the conditions alleged do not show that he was denied the minimal civilized measures of life's necessities. Thus, Defendants are entitled to summary judgment as to Count I.

**Count II – Deliberate Indifference**

"Deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must first show that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted). The following circumstances are indicative of an objectively serious condition: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily

activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.,* 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

An inmate must also show that prison officials acted with deliberate indifference. Specifically, the plaintiff must establish that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that they actually drew that inference. *Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

Defendants acknowledge that Kirk's alleged injuries from his fall on November 29, 2015 constituted an objectively serious condition and posed a substantial risk of serious harm. However, they argue that Kirk has proffered no evidence that Defendant Campanella obstructed his request for medical care, or was deliberately indifferent in any way. They point out that Kirk immediately received medical treatment following his fall; both by medical staff at Vienna and Heartland. Significantly, Kirk's medical records indicate that he was seen by medical staff on at least twenty-one separate days between November 29, 2016 and June 23, 2016, and that he was prescribed several medications for his injuries. He also received an MRI scan on November 29, 2015, and an X-ray on March 3, 2016.

Kirk contends that Campanella should have done more to make sure he received follow-up treatment after his injury. In particular, he takes issue with the fact that he was required to put

in a request slip for the healthcare unit in order to receive medical treatment. In other words, he does not believe it should have been his responsibility to put in request slips in order to be treated. But Kirk has failed to present any evidence of deliberate indifference by Campanella. It is clear from the record that he received medical care immediately following his fall and substantial follow-up treatment on twenty-one occasions. The fact that Kirk did not like following the administrative process in order to be seen by the medical staff does not give rise to deliberate indifference by the warden.[1] Therefore, Campanella is entitled to summary judgment as to Count II.

### Count III – Retaliation

It is well settled that a prison official who takes action in retaliation for a prisoner's exercise of a constitutional right violates the Constitution. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). In order for a plaintiff to prevail on a First Amendment retaliation claim, he must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)) (other citations omitted).

At the summary judgment stage, the burden of proving causation shifts between the parties. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Initially, in order to establish a prima facie case, Plaintiff must produce evidence that his speech was at least a motivating factor in the defendant's decision to take retaliatory action. *Id.* Then, the burden shifts to the defendant to rebut the causal inference raised by Plaintiff's evidence. *Id.* If Defendant fails to counter Plaintiff's evidence, then Defendant's retaliatory actions are considered a "necessary

---

[1] The Court did not review the personal involvement of Defendant Campanella because the Court found no constitutional deprivation.

condition" of Plaintiff's harm, and Plaintiff has established the "but-for" causation needed to succeed on his claim. *Id.* On the other hand, an inmate who has evidence that officials were motivated to discipline him because of protected speech cannot prevail if the officials show, without contradiction, that they would have disciplined him anyway for a legitimate reason. *Greene v. Doruff,* 660 F.3d 975, 978 (7th Cir.2011).

There is no dispute that Kirk's right to file a grievance is protected speech under the First Amendment. Defendants also do not dispute that being placed in segregation is a deprivation that would likely deter First Amendment activity in the future. They do argue, however, that Plaintiff was not sent to segregation because of a retaliatory motive – rather he was sent to segregation to maintain his safety and security.

On December 2, 2015, Defendant Ramage received an emergency grievance stating that Kirk was in fear for his safety and security because of the maintenance issues in Building 19. Kirk claims that his December 2, 2015 grievance was the motivating factor in Defendant Ramage's decision to send him to segregation.

According to Defendants, when an inmate alleges that he is in fear for his life or safety, he is placed in a segregation cell while an investigation is conducted so correctional staff can maintain his safety and security. They argue then, that placing an offender on investigatory status is not discipline. Indeed, Kirk did not receive a disciplinary ticket when he was placed in segregation. He spent five days in the segregation cell, and at the conclusion of the investigation, he was moved to new housing as requested.

Ramage rebuts the causal inference by explaining that it was not the act of filing the grievance, but rather the allegations the grievance contained that prompted Kirk being sent to segregation. As such, Ramage has shown, as a matter of law, that Kirk was sent to segregation

because of the safety concerns he raised, not out of retaliation. Accordingly, Defendant Ramage is entitled to summary judgment as to Count III.

## Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment (Doc. 59) is **GRANTED**. As no claims remain, the Clerk of Court **SHALL ENTER JUDGMENT** against Plaintiff Kirk and in favor of all Defendants and close this case.

**IT IS SO ORDERED.**

**DATED: April 12, 2018**

                                          **s/ Staci M. Yandle**
                                          **STACI M. YANDLE**
                                          **United States District Judge**